The next case, number 21-1581, Rafael Hernandez-Montanez v. The Financial Oversight and Management Board for Puerto Rico et al. At this time, would Attorney Martinez-Luciano please introduce himself on the record to begin? JORGE MARTINEZ-LUCIANO Yes. Good morning, Your Honors. If it pleases the Court, my name is Jorge Martinez-Luciano. I represent the appellant in this case. May we set aside one minute for rebuttal? JORGE MARTINEZ-LUCIANO Yes. JORGE MARTINEZ-LUCIANO Before you get to the merits, could you just address the standing issue? JORGE MARTINEZ-LUCIANO Yes, Your Honor. As I understand it, the main contention that both the government and the oversight board have raised in connection to standing is the contention that both the House and the Senate need to be here because Puerto Rico has a bicameral system. JORGE MARTINEZ-LUCIANO Well, could you address the prior question about why the Speaker of the House is in a position to represent the House? JORGE MARTINEZ-LUCIANO Oh, because under House resolutions, specifically the general House regulation section 5.2B, the body delegated the faculty upon the Speaker to represent the House on all judicial matters before Commonwealth and federal courts in which the prerogatives of the legislature are at issue. JORGE MARTINEZ-LUCIANO So there doesn't need to be any separate resolution for a particular suit? chooses to bring as a suit on behalf of the House, he can do so independent of what the topic is? JORGE MARTINEZ-LUCIANO Yeah. JORGE MARTINEZ-LUCIANO And he has authorization to do that under the existing resolutions? JORGE MARTINEZ-LUCIANO Yes, but the existing resolution, which is the general regulation of the House, specifically addresses matters concerning the powers and the prerogatives of the body and the exercise thereof. That's a subject matter that is covered under Section 5.2B. JORGE MARTINEZ-LUCIANO And what do we do about the fact that none of this piece is in the complaint as filed, given that it's all post-developments to the complaint itself that's before us? JORGE MARTINEZ-LUCIANO Well, Your Honor, with regards to this claim, we need to see the history of this complaint. This complaint was not filed by the Speaker while he was Speaker. It was filed by the minority delegation. JORGE MARTINEZ-LUCIANO So what's the significance of that for purposes of what we do with this complaint, given that we use the base standing on the complaint before us? JORGE MARTINEZ-LUCIANO Well, yes, but there are certain – this is a complaint that was filed as an official capacity complaint, and the official capacity that the current Speaker had at that time was minority leader. We understood that it's a matter of judicial knowledge that he became Speaker after his party won. JORGE MARTINEZ-LUCIANO But we don't have any filing before us asserting him now in his capacity as Speaker of the House, acting pursuant to those resolutions, bringing the claim in that capacity. JORGE MARTINEZ-LUCIANO And it was reversed by the U.S. Supreme Court. And when the case came back and we thought a lift of state, then matters had changed. I believe our appearance was on behalf, and it was always disclosed. It has never been challenged by any of the parties that, indeed, this is the Speaker. Mr. Hernandez-Montanez has become the Speaker of the House. This is not like a party being divorced and not disclosing being divorced to the court. This is something of general public knowledge to the point that under Rule 201, it's subject to judicial knowledge. And we understood that, as a matter of fact, I believe that the court also addresses the Speaker as the Speaker. There has never been a challenge to his authority as Speaker. Yes, Section 5.2p is not cited in the complaint because when the complaint was filed— A person asserting the authority that has been given to the Speaker under 5.2b, correct? Well, our briefs and— No, but the briefing isn't the record. There's nothing in the record that says to us the Speaker, pursuant to his authority under 5.2b, is before us. Well, the original filing could not cite 5.2b because— I'm not saying you did something wrong. He wasn't the Speaker. I'm just saying that, in fact, that's not the case. And so I'm trying to figure out what should then happen if you want to pursue a suit in that capacity. Wouldn't the proper thing to do to file a new complaint or amend this complaint? Well, all the arguments on the merits are on the record, thoroughly argued. Nobody has challenged that the Speaker, that Mr. Hernandez-Montanez is the Speaker or that he has the authority to represent the House. The challenge has been that the Senate needs to be here as well. That's what the appellees are arguing in this case. And we believe that it is a matter of judicial knowledge that both the district court and this court can take. The court can take judicial knowledge of his current position, which, again, nobody is disputing, and we can file a certified translation of Section 5.2b, if need be. Any further questions? Thank you, Your Honors. Thank you, Counsel. At this time, would Attorney Snell please come to the podium and introduce himself on the record to begin? He has five minutes of argument time.  My name is Dietrich Snell, representing the Financial Oversight and Management Board of Puerto Rico, and I'm with the firm of Crossgar and Rose. As Chief Judge Barron observed, the standing issue here is the threshold beyond which we submit the Speaker. The Speaker cannot cross to raise the merits of the claim. The law is clear, the Van Wagner case of this court, that the standing issue must be assessed based on the allegations and the complaint that's filed. There are, of course, a number of additional reasons why standing is deficient in this case, primarily under the Bethune-Hill decision. The reason why I'm not entirely convinced of that, the complaint says that the House lost funding in consequence of the statute. So that's different than Bethune, because that would be in interest of the House itself. Well, I think what the complaint says, Your Honor, is that the legislative function. No, the complaint says that the House had its budget cut, if I'm reading it right. I don't believe that that's what the district court considered. Well, that may be, but that would be a problem then, wouldn't it? I don't think it is, because I think under, I don't see there's a distinction that has been established. Well, I thought the idea was that if it's the prerogative of the legislative chamber itself, then the chamber itself can pursue, just like if it's a subpoena of the chamber. You don't need both chambers. The chamber itself can pursue its own subpoena power. So if there's a question about whether the effect of the statute is to reduce the budget of one chamber, why wouldn't that chamber have a special interest? Bethune wouldn't seem to control them. But the promise on its face does not reduce the funding of either chamber. It simply establishes the oversight board to But the effect was on the budget that they wanted to pass, right? That's the claim. The injury is that the budget they wanted to pass can't go forward. And that budget had specific funds for the House. But under the supremacy clause within PROMESA, again, Section 2103, it's clear that the board's determination as to a fiscal plan has to control over anything. Yeah, but we're just talking about the injury point. And I thought their contention in the complaint was that the House is injured by that preemptive action of the board insofar as it deprives them of a budget which would have increased the budget of the House. I don't read Bethune as being that narrow. I think that it states a very broad proposition that in a bicameral legislature structure, one portion of the legislature cannot speak for both in achieving standing. It does not, it will not. You don't disagree that the House could pursue its own subpoena power even after Bethune, do you? No, I don't. I think that's a very different issue. Okay. So we're just, it's a spectrum. And then the question is how much of it is a single body of the bicameral legislature's prerogative. That's an issue. I would have thought pocketbook concerns of a particular body might be pretty significant. I think in another circumstance they certainly could be, but I don't think that we are at that point. Putting that to one side, there's the separate 5.2B standing point where the complaint doesn't mention it. I take it your opponents are saying that's kind of, it's too formal because it's all judicially noticeable that the speaker does have that authority under 5.2B. What's your response to that? Yeah, and the district court did consider that. Judge Swain did acknowledge that things had changed over the passage of time and that the current speaker was now the speaker even though that was not the case at the time the complaint was filed. And citing Van Wagner, she said that's not sufficient. That does not get them past the threshold that they need to cross to have standing. So I think that's the answer here. And was there a motion to leave at any point to amend the complaint? There was not, Your Honor. There's nothing in the record that anything was done with respect to that. And I think there was actually ample opportunity just the way the briefing played out over time. The motion to dismiss was made. Then I believe the chronology is that the election took place, the new speaker, the current speaker was installed in that position, and that was all during the pendency of the briefing and certainly before any decision was made by Judge Swain. Counsel, I know we have our own obligation to assess the standing issue fully, but opposing counsel says that the narrow point that we're discussing now about whether the speaker can invoke the resolution that's been referred to, you've never challenged that. Isn't that correct? They say you focus only on the unicameral, bicameral legislature point. Is that correct? That's the only basis on which you've challenged standing in your briefing? Yeah. In our briefing, Judge, we address the resolution. It's actually, I think, a regulation. And our position is that it's not relevant because it does not get them past the Bethune-Hill problem, the bicameral problem. We think that it's also a question whether this regulation would be sufficient to confer the standing that is necessary to prosecute. When you say you think that, that's not in your briefing, though, this thought? No, that piece was not included in the footnote. In the district court, in ruling on this 5.2b issue, rather than addressing the substance of whether 5.2b could provide the authority for the speaker to proceed with this suit, simply said we don't reach it because it's not in the complaint? Is that right? Yes. Unless there are other questions, I'll rest on our brief. Thank you. Thank you, counsel. At this time, would Attorney Connolly please introduce himself on the record to begin? You have a five-minute argument. Good morning, and may it please the Court, Christopher Connolly on behalf of the United States. I'll begin first by addressing the standing arguments that have been discussed thus far. First of all, as Judge Barron indicates, with respect to the complaint as written, that was written at a time when the speaker was not yet the speaker and would not have had any argument for standing commensurate with the arguments that he is now pressing on appeal. But in any event, even accepting that Mr. Hernandez-Martinez is now the speaker and that this resolution gives him some degree of authority to represent the Puerto Rico House of Representatives in litigation, the standing issue still comes out in the same way as in the district court's order. And that is, in the first instance, due to the Supreme Court's decision in Bethune-Hill, which indicated that a single house of a bicameral legislature lacks the capacity to assert interests belonging to the legislature as a whole. And the interests that were at issue in Bethune-Hill are similar to the interests— Counsel, I'm sorry, but before you leave the 5.2b issue, if you're assuming for purposes of argument only, I take it that the argument that you're about to make is that 5.2b would authorize someone who wasn't the speaker, once they bring an action and may not have the representative capacity that would constitute standing, that can evolve as a matter of fact and judicial notice. So then what happens if the speaker is no longer the speaker? Does the same rule apply that now the complaint is invalid, there is no standing, or is it because at some point during the pendency of the complaint there's a determination that there was standing? Even if not at the time it was filed, then it's going to take some official action on the part of the House to eliminate standing, if they want to withdraw, for example. I mean, how would that work, hypothetically? Well, Judge Howard, let me kind of answer that as best as I understand kind of the nature of this. This is a House resolution. In other words, it's a resolution passed solely in the House. It is not, for example, a statute akin to what we saw in Bethune-Hill or Berger that expressly did or did not authorize, you know, the heads of the legislature to appear and represent the State and its interests. I assume that the nature of this resolution does not attach solely to Speaker Hernandez-Martinez himself. In other words, if he were to no longer be the speaker, absent some act by the House to withdraw this resolution, you know, that's a resolution that would still purportedly permit the speaker to represent the interests of the House of Representatives. But, again, under the Supreme Court's case law, that does not answer the standing question, even accepting that it does not answer the standing question posed in this case, which is the question more squarely addressed by Bethune-Hill, which is can a single House of a bicameral legislature assert interests that belong to the legislature as a whole? Can it assert interests that belong to it? It may be able to assert interests that belong to it, but those are not the interests that we're dealing with here. What do we make of the complaint's reference to the loss of funds to the House? Well, the budget, obviously, that was being, that was under consideration wasn't a budget simply for the House. No, but it had money for the House. It had money for the House. And that's going to be lost. It also had money for. . . But they don't care about that. They are interested in the money they'll lose. Well, they're interested more broadly. . . Maybe so, but aren't they interested in that? I mean, they put it in their complaint. They were, they are interested in that in the same way. . . So is that not enough? Suppose that was the only thing put in the complaint. Would that be enough to secure their standing? Respectfully, Your Honor, I think the answer to that is still no under Bethune-Hill. Why? Because what Bethune-Hill talked about was, what it rejected was the Virginia House of Delegates' argument that given its role in the overall legislative process, it had standing. And, of course, the House of Delegates in Bethune-Hill also asserted alleged harms based on, for example, the difference in composition to the legislature. I mean, that's a very different thing than the House itself having funds to operate sufficient that it thinks it needs. Well, Your Honor, if I may continue, again, I think Bethune-Hill should not be read so narrowly as to . . . If the federal government zeroed out the budget of the Virginia House, do you think the Virginia House could not sue to challenge that federal statute?  I mean, that's the position the United States has taken, that the federal government could defund one house of the Virginia legislature, and that house would have no standing. I'm not sure that that would be accurate or not. I think there would be some questions there that you would need to answer, some additional questions to determine whether there would be standing. Like what? Well, again, Bethune-Hill was dealing with an overall legislative process. I'm asking you if a federal statute defunded one house of a state legislature, would that state house, assuming state law allowed it to represent itself, have Article III standing to challenge the federal statute that defunded it? Assuming there was authority under the state, Your Honor, I'm not sure that Bethune-Hill allows for that, but it's possible that they would. Okay, so then here the contention is that their funding was reduced in their complaint. Your Honor, I think you can't divorce the funding aspect with respect to the House of Representatives from the broader allegations concerning the budgetary process, and that's where Bethune-Hill controls, because what we're talking about is a budgetary process that involves the governor, that involves the Senate, and that involves the House of Representatives, and that's what places this standing argument within the context of Bethune-Hill. If the Court has no further questions, the District Court's order should be affirmed. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has one minute rebuttal. Again, good morning. Jorge Martinez-Luciano for the record. Going to Judge Lipez's questions to the Board's counsel, we refer the Court to the Board's brief at page 16, footnote 2, in which the Board does acknowledge the existence of Article 5.2P of the General Regulation, and the only problem it finds with it is that it only authorizes representation of the House, and they understand that there should be a statute allowing representation of both Houses. So that is their position on the regulations. But just so I understand, in response to Judge Howard's question, we have a complaint here that, as filed, can't be predicated on 5.2B, correct? Correct. And then there's no allegation in the complaint before us that would give standing based on that provision, correct? Correct. Well, the challenge on the merits is the same that we're making. I understand, but there's no allegation that would give the plaintiff. Standing to represent the House as an institution, no. Correct. And then there was no request to amend the complaint to solve that problem, correct? Yes. And as a matter of fact, we want to address the statement regarding ample opportunity. This case was stayed until after the Speaker became Speaker, and we sought the leave of stay, and the Board immediately requested a briefing schedule for a motion to dismiss. And we went from stay lifted, motion to dismiss, case dismissed, and now we are on appeal. But at that briefing stage, you could have asked to amend, right? Yes, Your Honor. And as a matter of fact, we relied on judicial knowledge because nobody was disputing either the Speaker being the Speaker and his authority to represent the House. So we understood that it was not something that was an issue. And then just one last thing. After the district court relied on Van Wagner to say that the complaint couldn't go, did you make a motion to amend following that ruling? No, we moved directly to the notice of appeal. Finally, to one of the questions that was asked by Judge Howard, what happens to a lawsuit initiated by a Speaker of the House on behalf of the House when he ceases being Speaker? This regulation is not new. Every four years, a similar regulation is introduced. And as a matter of fact, we have handled several cases initiated by the prior Speaker. We even argued one before the Puerto Rico Supreme Court earlier this year. So generally, the incoming Speaker decides whether or not he wants to continue the House, having the House embroiled in that litigation. And if he does or she does, then the litigation continues under the new Speaker. And then last question for me. As you understand the complaint as written, what is the interest of the House that fits with it, that distinguishes it from Bethune? Well, both Bethune and the 2020 case are cases in which the legislature is trying to defend its own actions, the constitutionality of its own statutes, in cases in which the Attorney General of the state has declined to pursue the matter. And it's quite unusual that they do that because ordinarily the State Attorney General is the person called upon to defend the constitutionality of a statute. Is this a case where the budget that passed both chambers had assigned a certain amount of funding to the House and that's what's being invaded, or does this precede that point? No. It's the development of that budget. Your Honor, on the first three or four years under PROMESA, the Governor proposed the budget as per the constitution. The House and the Senate approved the budget and the Board disagreed and imposed its own budget. And in the case of the last budget that was imposed at the time of the filing of the complaint, it substantially undercut the resources that the House thought to assign on the budget that it had approved. So had the Board not asserted its constitutional prerogatives to approve a budget, then the House would have had the funds that it understood that it required. And finally, because we haven't had a lot of time to discuss Bethune-Hill, but the main distinction in that case, the legislature is taking the role in one of the cases because legislation allows them to do so in the 2020 case to defend the constitutionality of their own law in federal court where the executive branch has declined to do so. In this case, we're doing nothing of the sort. We're addressing the constitutionality of a federal statute as it affects the Puerto Rico House of Representatives. And we posit that our case is more similar to the Binns case, 406 U.S., page 187, in which the Senate of Minnesota, of the state of Minnesota, by resolution precisely, allowed and asked the Senate to intervene in a federal action. And the court found that that was sufficient for the Senate to represent its own interest without regard of the House not being in that particular case. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.